IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| Te'Londra M.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 7:20–CV–362 |
| | ) |
| KILOLO KIJAKAZI,[2] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Te'Londra M. ("Te'Londra") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Te'Londra alleges that her impairments prior to age eighteen functionally equaled a listing and that the Administrative Law Judge ("ALJ") erred by finding she had less than marked limitation in the domains of acquiring and using information and attending and completing tasks. She also alleges that the ALJ failed to properly assess her mental impairments, determine her RFC using a function–by–function analysis, and assess her allegations regarding her symptoms.

I agree that the ALJ's decision is not supported by substantial evidence, as the ALJ failed to properly evaluate Te'Londra's mental impairments under SSR 96-8P, including adequately

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

explaining the RFC limitation restricting her to no "fast-paced production work." Accordingly, I **RECOMMEND GRANTING in part** Te'Londra's Motion for Summary Judgment (Dkt. 14), **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. 18) and **REMANDING** this matter for further administrative consideration.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Te'Londra failed to demonstrate that she was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was

---

[3] The Act defines "disability" for a claimant under the age of eighteen for purposes of eligibility for SSI payments if he has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). "Disability" for a person over age eighteen is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citations omitted). In Mascio and Monroe, the court remanded because the ALJ failed to adequately explain how he arrived at his conclusions regarding the claimant's RFC. Mascio, 780 F.3d at 636; Monroe, 826 F.3d at 189. Similarly, I find that remand is appropriate here because the ALJ's opinion leaves the court to guess at how she reached her conclusions regarding Te'Londra's RFC.

**CLAIM HISTORY**

Wanda C. ("Wanda"), Te'Londra's grandmother, protectively filed on behalf of Te'Londra for SSI in January 2017, claiming that Te'Londra's disability began on January 24, 2017,[4] due to attention deficit hyperactivity disorder ("ADHD"), difficulty focusing, grades falling in school, problems at birth, difficulty eating, asthma, reflux, and severe migraines. R. 46, 188–99, 212–20. At the time Wanda filed for SSI, Te'Londra was a school-aged child; at the time of the ALJ's decision, Te'Londra was an adult. R. 16, 20. The state agency denied Te'Londra's application at the initial and reconsideration levels of administrative review. R. 80–89, 90–99. On November 15, 2018, ALJ David Lewandowski held a hearing to consider Te'Londra's disability claim. R. 40–69. Counsel represented Te'Londra at the hearing, which included testimony from Te'Londra, Wanda, and vocational expert Barry Hensley. Id.

On May 9, 2019, the ALJ entered his decision analyzing Te'Londra's claim as both a minor and as an adult. The ALJ began with the three-step process to determine if a minor is disabled. 20 C.F.R. § 416.924. First, the ALJ must determine whether the claimant is engaged in substantial gainful activity; if so, the claimant is not disabled. Id. §416.924(a), (b). Next, the ALJ

---

[4] Wanda originally stated that Te'Londra's disability began on May 12, 2013, however, Te'Londra amended this date to January 24, 2017 at her hearing. R. 46.

3

must determine whether the claimant suffers from "an impairment or combination of impairments that is severe," if not, the claimant is not disabled. Id. § 416.924(a), (c). To qualify as a severe impairment, it must cause more than a minimal effect on the claimant's ability to function. Id. § 404.924(c). If an impairment is "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations," then it is not severe. Id. If the claimant has a severe impairment, the analysis progresses to Step Three where the ALJ must consider where the claimant's impairment or combination of impairments meets, medically equals, or functionally equals a listing. Id. § 416.924(a), (d). If the claimant has such impairment, and it meets the duration requirement, the claimant is disabled. Id.

The ALJ found that Te'Londra was not engaged in substantial gainful activity and before attaining age eighteen suffered from the severe impairments of ADHD, migraine headaches, and asthma. R. 21. However, the ALJ concluded at Step Three that Te'Londra's severe impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404 Subpart P, App'x 1. Id.

When conducting this Step Three Analysis, the ALJ must consider the six relevant domains[5] of functioning to determine whether Te'Londra's severe impairments functionally equal a listed condition: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and, (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). In order for a claimant to be found disabled, marked limitations must be assessed in at least two domains or an extreme limitation assessed in one domain. Id. § 416.926a(a). "Marked" limitation is defined as "more than moderate" but "less than extreme." Id. § 416.926a(e)(2)(i). A minor has a "marked"

---

[5] The domains "are broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1).

limitation in a domain when his impairments interfere seriously with his ability to independently initiate, sustain, or complete activities. Id. Extreme limitation is defined as "more than marked." Id. § 416.926a(e)(3)(i). While extreme limitation is the rating given to the worst limitations, it does not necessarily require a total lack or loss of ability to function. Id.

Here, the ALJ, after considering the six functional "domains" concluded that Te'Londra's impairments, either individually or in combination, were not functionally equivalent to a listed condition. R. 22. The ALJ concluded that Te'Londra had less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and health and physical well-being and no limitations in the domains of interacting and relating with others, moving about and manipulating objects, and caring for yourself. R. 25–29. Accordingly, the ALJ found that Te'Londra did not have an impairment or combination of impairments that resulted in either "marked" limitations in two domains of functioning or "extreme" limitations in one domain of functioning.

Next the ALJ evaluated whether Te'Londra was disabled as an adult. 20 C.F.R. § 416.920; see Albright v. Comm'r, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ entered his decision analyzing Te'Londra's claims under the familiar five-step process. The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barhnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at Steps One through Four to establish that the claimant maintains the residual functional capacity ("RFC"),

5

considering the claimant's age, education, work experience, and impairments to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975). The ALJ denied Te'Londra's claim for benefits. R. 30.

The ALJ found that Te'Londra suffered no new impairments since attaining age eighteen. R. 30. The ALJ determined that her impairments, either individually or in combination, did not medically meet or medically equal a listed impairment. Id. The ALJ specifically considered listing 11.00 (neurological disorders), 3.03 (asthma), 12.10 (autism spectrum disorder), and 12.11 (neurodevelopmental disorder). Id. The ALJ found that regarding her mental impairments, Te'Londra had a moderate limitation in concentrating, persisting, or maintaining pace, a mild limitation in understanding, remembering, or applying information, and no limitations in interacting with others and adapting or managing oneself. R. 30–31.

The ALJ concluded that Te'Londra retained the RFC to perform a full range of work at all exertional levels. R. 32. The ALJ identified several non-exertional limitations, however, including, avoiding concentrated exposure to pulmonary irritants. Id. Te'Londra can understand and carry out simple instructions and perform simple tasks, but she cannot perform fast-paced production work. Id. She can perform her job through demonstration rather than reading, and in order to avoid distraction, she should work independently and not in tandem with others. Id. Te'Londra will be off task less than 15 percent of the workday and absent up to one day each month. Id. The ALJ determined that Te'Londra has no past relevant work, but she could perform jobs that exist in the national economy, such as maid, domestic laundry worker, and folding machine operator. R. 33. Thus, the ALJ determined that Te'Londra was not disabled. R. 34. Te'Londra appealed the ALJ's decision and the Appeals Council denied her request for review on April 24, 2020. R. 1–6.

# ANALYSIS

Te'Londra alleges that her impairments prior to age eighteen functionally equaled a listing and that the Administrative Law Judge ("ALJ") erred by finding she had less than marked limitation in the domains of acquiring and using information and attending and completing tasks. She also alleges that the ALJ failed to properly assess her mental impairments, determine her RFC using a function-by-function analysis, and assess her allegations regarding her symptoms.

**A. Medical History**

1. Educational and Medical Evidence

Te'Londra was sixteen years old on her amended alleged onset date and eighteen years old when the ALJ issued his decision. R. 20. Throughout high school, Te'Londra participated in a regular classroom setting, but she received additional academic support services through her 504 Plan, including preferential seating, extended time for assessments and make-up work, and audio-based testing. R. 318, 419, 474, 487, 512. Te'Londra did not have an Individualized Education Plan (IEP). R. 318, 419, 474, 487.

Te'Londra's high school teachers consistently indicated that she required assistance to complete assignments, had difficulty retaining information, and required directions to be repeated or otherwise had difficulty following multiple steps. R. 315, 317, 472. Some teachers indicated that they noticed a change in Te'Londra's disposition around February 2018, noting that she appeared more depressed and less motivated. R. 317.

Te'Londra graduated from high school with a standard diploma. R. 22. She currently attends community college and receives special accommodations, including preferential seating, an alternate space to take tests, and extended time for assessments. R. 47–48.

Prior to her alleged onset date, Te'Londra regularly treated for migraines, headaches, asthma, vision issues, and ADHD. See, e.g., R. 23, 364–69, 396, 400, 409, 558–62. She

additionally suffered concussions in 2013 and 2016, which resulted in migraines and symptoms consistent with post-concussive syndrome. R. 337, 360–62, 502, 504. Neurological examination suggested migraine with aura and history of concussion. R. 440, 442. Her attending physician recommended vitamin therapy, prescription medication, and lifestyle modifications, however, Te'Londra's grandmother voiced concern about starting Te'Londra on prescriptions. R. 442.

In February 2017, Te'Londra presented at the emergency room after having an asthma attack. R. 528. She responded well to treatment and was instructed to follow-up with her primary care physician. R. 529, 540. In March 2017, Te'Londra attended two appointments with her primary care physician, Joyce Cummings, M.D., for sore throat and ear pain. R. 492–95. Dr. Cummings noted a history of migraine headaches and intermittent asthma, and diagnosed her with earache, nausea, and uncomplicated asthma. R. 492–93.

Te'Londra attended an appointment with an attending physician at Lewis Gale Physicians in November 2017 for congestion. R. 544–45. Her physical exam was generally normal, and she was diagnosed with upper respiratory infection and ADHD. R. 545. She followed-up in February 2018 with Lewis Gale Physicians and complained of short-term cough and congestion after a recent asthma attack. R. 546. Her physical examination was generally normal, and she was diagnosed with a cold, impacted cerumen of her right ear, mild intermittent asthma, and seasonal and perennial allergic rhinitis. R. 547. She was prescribed medication to manage her symptoms. Id. Te'Londra followed-up with Dr. Cummings in August 2018 for a wellness visit. R. 549. Dr. Cummings noted Te'Londra was mildly depressed, but she had normal physical findings. R. 549–50.

2. Opinion Evidence

In November 2015, state agency doctors Patricia Bruner, Ph.D., and Joseph Familant, M.D., found that Te'Londra had less than marked limitations in the domains of attending and

completing tasks and caring for yourself and no limitations in the domains of acquiring and using information, interacting and relating with others, moving about and manipulating objects, and health and physical well-being. R. 74–75. The ALJ gave Drs. Bruner and Familant's opinion some weight. R. 24.

In May 2017, state agency doctors Louis Perrott, Ph.D., and Joseph Familant, M.D., found that Te'Londra had less than marked limitations in the domains of acquiring and using information and attending and completing tasks and no limitations in the domains of interacting and relating with others, moving about and manipulating objects, caring for yourself, and health and physical well-being. R. 84–85. The ALJ gave Drs. Perrott and Familant's opinion some weight. R. 25.

In August 2017, state agency doctors Richard Milan, Ph.D., and Richard Surrusco, M.D., found that Te'Londra had less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and health and physical well-being and no limitations in the domains of interacting and relating with others, moving about and manipulating objects, and caring for yourself. R. 94–95. The ALJ gave Drs. Milan and Surrusco's opinion significant weight. R. 25.

The record also contains a Teacher Questionnaire from Te'Londra's tenth and eleventh grade English teacher, Daniel Johnson. R. 515–22. Mr. Johnson noted that Te'Londra had obvious or slight problems in the domain of acquiring and using information and slight problems in the domain of attending and completing tasks. R. 516–17. In these areas Mr. Johnson specifically noted that Te'Londra required extra time, that she had difficulty following multiple instructions, and that she always asked for additional help. Id. Mr. Johnson identified no problems in the remaining domains, though he noted that she is a visual learner and has difficulty with reading comprehension. R. 522.

B. **Mental Impairments Under SSR 96–8P**

Te'Londra argues that the ALJ failed to properly assess her mental impairments as required by SSR 96–8P. See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96–8P (S.S.A. July 2, 1996).[6] Specifically, Te'Londra asserts that the ALJ erred by failing to properly: address her ability to sustain work over an eight-hour workday, explain his findings that she is expected to be off-task less than 15 percent of the workday and absent up to one day each month, and explain the RFC limitation finding her incapable of "fast-paced production work." Pl.'s Br. at 20–29, Dkt. 15.

SSR 96–8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10–cv–2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8P at *7; Meadows v. Astrue, No. 5:11–cv–63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9–cv–2545, 2010 U.S. Dist. LEXIS 132972, at *15–16 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an appropriate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often); Shinaberry v. Saul, 952

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

F.3d 113, 121 (4th Cir. 2020) (underscoring ALJ's duty to adequately review the evidence and explain the decision).

The ALJ must build a logical bridge between the limitations he finds and the vocational expert evidence relied upon to carry the Commissioner's burden at Step Five. Carline S. v. Berryhill, TMD–17–3094, 2018 WL 4914233, at *5 (D. Md. Oct. 10, 2018). The Commissioner employs vocational experts to offer evidence as to whether a claimant possesses the RFC to meet the demands of past relevant work or adjust to other existing work. 20 C.F.R. §§ 404.1560(b)(2). "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Hines v. Barnhart, 453 F.3d 559, 566 (4th Cir. 2006) (quoting Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989)). "[A] hypothetical question is unimpeachable if it adequately reflects a [RFC] for which the ALJ had sufficient evidence." Fisher v. Barnhart, 181 F. App'x 359, 364 (4th Cir. 2006) (quoting Johnson, 434 F.3d at 659.

Te'Londra challenges the ALJ's use of the term "fast-paced production work," noting that the ALJ did not properly define the term. Pl.'s Br. at 26, Dkt. 15. She relies on the Fourth Circuit's opinion in Thomas v. Berryhill, 916 F.3d 307 (4th Cir. 2019), to support her argument that the ALJ's use of the term is a basis for remand. Id. In Thomas, the Fourth Circuit found that meaningful appellate review of an ALJ's RFC was frustrated, in part, where an ALJ limited Thomas to no work "requiring a production rate or demand pace." Thomas, 916 F.3d at 312. The Fourth Circuit found that the ALJ did not provide "enough information to understand what those terms mean," and specifically noted:

> [The lack of definition] makes it difficult, if not impossible, for us to assess whether their inclusion in Thomas's RFC is supported by substantial evidence. The Commissioner contends that "production rate" and "demand pace" are

11

> "common vocationally relevant functional limitations." But those terms appear in a vanishingly small number of Social Security cases involving RFC evaluations . . . We therefore disagree with the Commissioner: the terms do not seem to be especially common—certainly not common enough for us to know what they mean without elaboration.

Id. Following Thomas, the Fourth Circuit found in Perry v. Berryhill, 765 F. App'x 869 (4th Cir. 2019), that remand was required where a RFC assessment limited Perry to unskilled work in "non-production oriented work setting." Perry, 765 F. App'x at 872–73. The Fourth Circuit found that "non-production oriented work setting" was not defined in the regulations or by case law and was not otherwise self-explanatory. Id. Further, the ALJ failed to offer an explanation for that phrase, and therefore the Court found that it remained "uncertain as to what the ALJ intended" and could not "meaningfully assess whether there was a logical bridge between the evidence in the record and the ALJ's conclusion."[7] Id.

Courts have analyzed the term used here, "fast-paced production work," using the Thomas and Perry framework. See, e.g., Christopher M.H. v. Comm'r, ADC–19–655, 2020 WL 2556563, at *5 (D. Md. May 20, 2020). These courts generally allow ALJs to use "fast-paced production work" and other like terms so long as the ALJ provides a clear definition for the term. See, e.g., Teresa B. v. Comm'r, No. SAG–18–2280, 2019 WL 2503502 (D. Md. June 17, 2019); Jackie v. Comm'r, DLB–18–3883, 2019 WL 5960642 (D. Md. Nov. 13, 2019). However, when an ALJ fails to provide a definition, courts typically conclude that there is no logical bridge between the evidence and the ALJ's conclusion. See, e.g., Christopher M.H., 2020 WL 2556563, at *5; Crystal O. v. Saul, TMD–20–948, 2021 WL 1087077, at *4–5 (D. Md. Mar. 22, 2021).

---

[7] Later courts have read Perry to "support[] the proposition that a case can be remanded when the sole error of the ALJ is the failure to define 'non-production oriented work setting' or a like term. See Ursula G. v. Comm'r, SAG–18–1841, 2019 WL 2233978, at *3 (D. Md. May 23, 2019); Margaret S. v. Saul, CBD–19–2492, 2020 WL 7319334, at *11 (D. Md. Dec. 11, 2020).

Here, the ALJ failed to provide a definition or satisfactory explanation to serve as a "logical bridge" to clarify the meaning of his use of the term "fast-paced production work." At Te'Londra's hearing, the ALJ asked the vocational expert to consider the following hypothetical:

> [A]ssume an individual of the claimant's age, education[,] and work experience who has no exertional limitations but should avoid concentrated exposure to pulmonary irritants. Additionally[,] the individual is able to understand, remember, carry out simple instructions[,] and perform simple tasks[,] but should avoid fast-paced production work. Additionally[,] the individual can learn a job through demonstration rather than reading.

R. 67. The Commissioner argues that the ALJ adequately explained the term "fast-paced production work," specifically noting that in his decision, the ALJ explained Te'Londra's mental abilities and, additionally, stated "[m]oreover, due to her ADHD, the claimant is limited to remembering and carrying out simple instructions and performing simple tasks *at a relaxed pace*; and is able to learn her duties through demonstration rather than reading." Comm'rs Br. at 19–20, Dkt. 19 (emphasis in original) (quoting R. 32).

The ALJ's single description of "fast-paced production work" as "a relaxed pace" in his decision is insufficient. This description is used a single time, not in conjunction with the RFC, and without any further analysis.[8] While the ALJ likely intended for "a relaxed pace" to modify the limitation to no fast-paced production work, that is not entirely clear. See Teresa B. v. Comm'r, No. SAG–18-2280, 2019 WL 2503502 (D. Md. June 17, 2019) (affirming ALJ's decision when ALJ provided a "clear explanation of the 'production-rate pace' limitation"); Cleta S. v. Saul, CBD–19–2906, 2020 WL 6565250, at *5 (D. Md. Nov. 9, 2020) (finding definition provided only in ALJ's decision "left [the

---

[8] Moreover, the term "relaxed pace" is not particularly precise. See Trifiletti v. Saul, 2019 WL 3501052, No. 1:18–cv–679, at *10 (N.D. Ohio Aug. 1, 2019) (noting that ALJ gave "relaxed pace" limitation suggested by state agency doctor no weight because it was an imprecise term); Cordray v. Astrue, No. 08–1386, 2010 WL 2608331, at *6 (D. Or. Mar. 3, 2010) (noting vocational expert requested additional information when the ALJ gave a hypothetical including a relaxed pace).

court] to guess whether the evidence was the basis for the ALJ's conclusion regarding 'production rate pace'").

More importantly, the ALJ failed to define the term "fast-paced production work" at the hearing. As described in Cleta S., this alone constitutes error:

> The Court finds it troubling that the ALJ attempted to clarify his use of the term [] for the first time in his written opinion . . . The clarity was far too late. While the ALJ attempted to remedy his use of the undefined term, because it was after the hearing concluded and the [vocational expert] did not have an opportunity to hear the explanation by the ALJ, the [c]ourt finds that this remedial action prejudiced [p]lainitff . . . [The court] reasons, that due to the ALJ not explaining the term [] to the [vocational expert], the ALJ conducted an improper hypothetical.

2020 WL 6565250, at *5. Moreover, given the failure to define fast-paced production work at the hearing, the court "cannot decisively say" that "the [vocational expert] would have identified the same, or any positions that the hypothetical person could perform." Geneva W. v. Comm'r, SAG–18–1812, 2019 WL 325433, at *3 (D. Md. July 19, 2019) (citing Patterson v. Comm'r, 846 F.3d 656, 658 (4th Cir. 2017)); Ursula G., 2019 WL 2233878, at *2–3 (remanding case when ALJ presented vocational expert a hypothetical that failed to define "not at production pace").

Accordingly, the ALJ here erred by failing to define fast-paced production work at the hearing and thus presented an improper hypothetical to the vocational expert. Remand is necessary to provide a proper definition to the term fast-paced production work and to create a logical bridge between the evidence and the ALJ's conclusion. In light of this basis for remand, the court need not discuss Te'Londra's remaining allegations of error. See Boone v. Barnhart, 353 F.3d203, 211 n. 19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).

## **CONCLUSION**

For the foregoing reasons, I **RECOMMEND GRANTING in part** Te'Londra's motion

for summary judgment, **DENYING** the Commissioner's motion for summary judgment, and **REMANDING** this case pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

            Entered:  July 30, 2021

            *Robert S. Ballou*

            Robert S. Ballou
            United States Magistrate Judge